NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted July 7, 2008[*]
Decided July 7, 2008

**Before**

RICHARD D. CUDAHY, *Circuit Judge*

MICHAEL S. KANNE, *Circuit Judge*

ILANA DIAMOND ROVNER, *Circuit Judge*

| | |
|---|---|
| Nos. 07-3904, 07-3905 | |
| | Appeal from the United States District |
| UNITED STATES OF AMERICA, | Court for the Western District of |
| *Plaintiff-Appellee,* | Wisconsin. |
| | |
| *v.* | No. 07-CR-52-C-01 |
| | |
| FREDERICK G. KRIEMELMEYER | Barbara B. Crabb, |
| *Defendant-Appellant.* | *Chief Judge.* |

**O R D E R**

Frederick Kriemelmeyer was convicted after a jury trial on four counts of falsifying federal income tax returns, 26 U.S.C. § 7206(1), and was sentenced to 36 months' imprisonment. Along with a number of entirely frivolous tax-protest arguments, Kriemelmeyer appears to argue on appeal that the district court denied him the effective

---

[*]After an examination of the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* Fed. R. App. P. 34(a)(2).

assistance of counsel and that insufficient evidence supported the jury's verdict. We affirm.

In 2002, Kriemelmeyer was a self-employed dentist who owned and operated a dental office in LaCrosse, Wisconsin. That year, his mother began frequently cashing checks made payable to cash at a local bank. Bank employees became suspicious of these deposits and notified the IRS, which investigated and in December 2004 executed a search warrant at his dental office. In March 2007 a grand jury returned an indictment charging that Kriemelmeyer's 2000, 2002, 2003, and 2004 returns reported gross receipts substantially below his income. The IRS determined that he underreported his gross receipts by $392,023 in total for those four years, thus underpaying his taxes by $135,337.

At a pre-trial hearing, the magistrate judge informed Kriemelmeyer of his right to an attorney and asked him if he wanted an attorney. He declined. The magistrate judge asked him questions to ensure that he understood his right to an attorney, but he continued to insist that the did not want one. Kriemelmeyer maintained that he had studied law on his own, had been following tax-related issues for 15 years, had represented himself in court before, was familiar with the rules of criminal procedure and evidence, and understood the charges against him. The magistrate judge tried to persuade him to use an attorney nonetheless, but he would not change his mind. After the hearing, Kriemelmeyer filed a motion for appointment of David Wynn Miller, a so-called "Plenipotentiary Judge," as counsel. Because Miller was not admitted to practice in the Western District of Wisconsin and there was no indication that he was a licensed attorney anywhere, much less a judge, the magistrate judge denied the motion.

During Kriemelmeyer's three-day jury trial, the government presented 17 witnesses, including some of his former patients, IRS agents and employees, and employees at the bank where his mother cashed his checks. Kriemelmeyer called Miller as a witness and also testified himself. His patients and IRS agents testified that the checks that Kriemelmeyer's mother cashed were paid to Kriemelmeyer in return for dental services. Patients further testified that sometimes Kriemelmeyer would exchange cash for silver and then the client would "barter" the silver for dental services. Kriemelmeyer would often put a star next to an amount on the patient's record, indicating that the patient paid defendant five times more than what the records indicate, and he would report the lower amount on his tax returns. The government also introduced into evidence letters from state and federal taxing authorities advising him that his belief that bartering silver for dental services did not create income was frivolous. Kriemelmeyer was convicted of all counts.

On appeal Kriemelmeyer's arguments are difficult to discern, but it is apparent that he contends that he was denied the effective assistance of counsel. A criminal defendant

may proceed pro se when he voluntarily and intelligently elects to do so, and we will reverse only if the record as a whole does not show that the defendant knowingly and intelligently waived his right to counsel. *United States v. Avery*, 208 F.3d 597, 601 (7th Cir. 2000). We review the district court's decision to allow a defendant to proceed pro se for abuse of discretion. *Id.* In this case, there is no abuse. The magistrate judge thoroughly questioned Kriemelmeyer to establish that he understood the disadvantages of representing himself, that he was competent to represent himself, and that the decision was voluntary. *See id.* Kriemelmeyer does not point to any deficiencies in the judge's inquiry, nor does he identify any basis to support his assertion that the court abused its discretion in allowing him to represent himself. Furthermore, had the court allowed Miller to represent Kriemelmeyer, *that* decision would have been an abuse of discretion because representation by a nonlawyer, as Miller appears to be, is by definition ineffective. *See Cole v. United States*, 162 F.3d 957, 958 (7th Cir. 1998). And, in addition, even if Miller were licensed he could not have served effectively because Kriemelmeyer used Miller as his only witness (beside himself). A lawyer cannot ordinarily represent a client and simultaneously serve as the client's witness. *United States v. Marshall*, 75 F.3d 1097, 1106 (7th Cir. 1996).

Kriemelmeyer's only other discernable argument is that the jury had insufficient evidence to convict him. We will overturn a conviction based on insufficient evidence only when "the record is devoid of evidence from which a reasonable jury may find guilt beyond a reasonable doubt." *United States v. Seymour*, 519 F.3d 700, 714 (7th Cir. 2008). In order to convict Kriemelmeyer, the jury was required to find that:

> (1) that the defendant made or caused to be made, a federal income tax return for the year in question which he verified to be true; (2) that the tax return was false as to a material matter; (3) that the defendant signed the return willfully and knowing it was false; and (4) that the return contained a written declaration that it was made under the penalty of perjury.

*United States v. Peters*, 153 F.3d 445, 461 (7th Cir. 1998). Testimony from the IRS agents, Kriemelmeyer's patients, and Kriemelmeyer himself, combined with the records seized from his office and the tax returns established that Kriemelmeyer knowingly and significantly under-reported the his income on his tax returns. Specifically, Kriemelmeyer admitted that he signed and submitted the tax returns that were proven to contain false statements of income. His patients' testimony and his own internal records provided ample evidence that he knew that he received higher income than his returns reflected. Furthermore, letters from tax authorities informing him of his tax obligations, and the fact that his mother cashed his checks for him provide further, and more than sufficient,

evidence that he acted willfully and knowingly.  The record thus contains ample evidence to support Kriemelmeyer's convictions.

Kriemelmeyer's remaining arguments are patently frivolous, and include many typical and tired tax-protestor arguments, like the claim that the payment of taxes is voluntary, that § 7206(1) does not have the force of law, and that he is not subject to the tax laws.  We have said that "these arguments, frivolous when first made, have been rejected in countless cases.  They are no longer merely frivolous; they are frivolous squared." *United States v. Cooper*, 170 F.3d 691, 691 (7th Cir. 1999).

For the foregoing reasons, we AFFIRM Kriemelmeyer's conviction.